UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

MICHAEL J. GRACE,                            )
                                             )
                    Petitioner,              )
                                             )
       v.                                    )          1:22CV976
                                             )          1:22CV977
EDDIE BUFFALOE,                              )          1:22CV978
                                             )
                    Respondent.              )


RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

       Petitioner Michael J. Grace, a prisoner of the State of North Carolina, has filed three

Petitions seeking writs of habeas corpus pursuant to 28 U.S.C. § 2254. (Case No. 1:22CV976

[Doc. #2]; Case No. 1:22CV977 [Doc. #2]; Case No. 1:22CV978 [Doc. #2].)[1]  Each of the

Petitions challenges a separate state court conviction, but the convictions are related and the

facts and claims overlap.  Respondent has answered and filed a single Motion for Summary

Judgment as to all three Petitions, and Petitioner has filed a Response and Supplement to the

Response, as well as a request for an evidentiary hearing.

       The claims in these Petitions challenge two separate sets of convictions.  First, on

January 28, 2019, in the Superior Court of Alamance County, North Carolina, Petitioner pled

no contest to felony larceny and financial card theft. As part of the plea agreement, he received

---

[1] Unless a case number is otherwise specified, citations to documents refer to entries in Case No. 1:22CV976.
All citations to documents use the page numbers located at the bottom right-hand corner of the documents as
they appear in CM/ECF.

a single consolidated sentence of 24 to 38 months, and the court dismissed a habitual felon charge and an unrelated charge for being a felon in possession of a firearm. Second, on March 14, 2019, Petitioner pled guilty to two counts of assault inflicting physical injury on a law enforcement officer, and admitted to habitual felon status. In keeping with the plea agreement, additional charges were dismissed, and he received sentences of 34 to 53 months on the first assault, and 35 to 54 months on the second assault, the sentences to be served consecutive to one another and consecutive to the time he was serving on the felony larceny and financial card theft convictions.[2] (Tr. of 3/24/2019 Hr'g. [Doc. #14-13] at 16.)

Petitioner did not file a direct appeal with respect to any of his convictions. On March 4, 2020, he filed a Motion for Appropriate Relief ("MAR") in the Superior Court of Alamance County, challenging his January 2019 plea to larceny and financial card theft. That MAR was denied by the state court on April 13, 2020. He subsequently filed a petition for writ of certiorari with the North Carolina Court of Appeals on December 2, 2020. The North Carolina Court of Appeals dismissed the petition on December 4, 2020, citing N.C. R. App. P. 21(c), for Petitioner's failure to "attach necessary supporting documents." (Order of 12/4/20 [Doc. #14-20] at 2.) In December 2021, Petitioner sought certiorari from the North Carolina Supreme Court, and that request was dismissed on February 9, 2022.

On April 22, 2022, Petitioner filed a second Motion for Appropriate Relief in Superior Court, challenging both the January 2019 plea to larceny and financial card theft and the March 2019 plea to two counts of assault inflicting physical injury on a law enforcement officer with

_____

[2] Petitioner was originally sentenced to 36 to 54 months imprisonment on the second assault, but the sentence was corrected to match the state structured sentencing chart, and he was resentenced to 35 to 54 months imprisonment. (Tr. of 8/15/19 Hr'g. [Doc. #14-16] at 3-4.)

habitual felon status. That second MAR was denied by the state court on June 6, 2022. Petitioner did not seek review of this ruling. Petitioner thereafter made various filings in this court, including the three Petitions addressed in this order.[3] The Petitions were received and filed on November 10, 2022. The claims in the Petitions overlap in many respects and will all be addressed in this Recommendation.

<u>Facts</u>

Petitioner's convictions arise from the taking of a purse from a Food Lion grocery store in Graham, North Carolina on July 22, 2017. The information from the factual basis offered at the time of the plea indicates the victim, who was 82 years old at the time, left her purse at the register area after paying for her groceries. (Tr. of 1/28/19 Hr'g. [Doc. #14-7] at 21.) She left the store, but while in the parking lot realized she had forgotten her purse and returned to the store. The purse was no longer at the register area. (<u>Id.</u> at 21-22.) According to the victim, the purse contained cash as well as debit and credit cards. Petitioner Grace was identified as a suspect from the store surveillance video. The video showed that he was several customers behind the victim in line, and when he went through, he noticed the purse and picked it up. (<u>Id.</u> at 22.) A detective from the Graham police department initially reached out to Petitioner

---

[3] Petitioner filed a letter with this court on March 28, 2022, raising claims about his felony larceny case having an illegal sentence and stating that he wanted to file an appeal with this court. Petitioner's letter was construed as a petition for habeas corpus under 28 U.S.C. § 2254 but dismissed without prejudice for failing to use the proper forms and failing to pay the filing fee or submit a request to proceed *in forma pauperis*. (<u>See</u> 1:22CV245 [Docs. #2, #4].) Similarly, a letter filed on May 12, 2022, raised a claim that an invalid conviction was used to calculate the points on his sentence. This too was dismissed without prejudice due to failing to use the proper forms and failing to pay the filing fee or submit a request to proceed *in forma pauperis*. (<u>See</u> 1:22CV367 [Docs. #4, #6].) A letter filed on December 8, 2022, raised questions about what he was supposed to file. It appears this letter was written after he filed the three Petitions addressed in this Order. This was also dismissed without prejudice due to failure to use the forms or set out proper claims, and noting that his claims were already proceeding in the pending cases. (<u>See</u> 1:22CV1064 [Docs. #4, #6].)

about what happened at the Food Lion and indicated that if Petitioner had something and brought it to the police department, they might be able to resolve the matter. (Id. at 23.) When Petitioner did not return the purse, officers went to the home where Petitioner stayed with his fiancée. He admitted he had the item, and it was retrieved from a grill behind the home. The cash that had been inside the purse, more than $1,000 according to the victim, was missing. (Id. at 23-24.) Petitioner ultimately pled no contest on January 28, 2019, to larceny and financial card theft and was sentenced to 24 to 38 months. He requested and was allowed a week to self-report so that he could address various family matters before serving his sentence, and he was directed to return to turn himself in on February 4, 2019. (Id. at 9-10, 31.)

When Petitioner appeared on February 4th, he did not surrender to serve his sentence and instead asked to withdraw his plea. (Id. at 33-36.) The court denied his request, finding the plea had been entered "freely, voluntarily and understandingly." (Id. at 35, 36.) The court recognized the judgment had already been entered. (Id. at 36.) When the court directed the officers to take Petitioner into custody the transcript reflects that he said, "I'm not going. I'm not going." (Id. at 37.) The transcript further indicates "[c]ommotion erupts in the audience of the courtroom. The defendant attempts to jump over the rail. As defendant is caught by Officers Yancey and Officer Burrow, the defendant sprays mace." (Id.) Petitioner continued to verbally resist and yelled an obscenity as he was removed from the courtroom. (Id.) At the plea hearing on the assault charges, further details were elicited which showed Petitioner had pulled out pepper spray and used it on the officers as he was caught. During the struggle, one officer was elbowed by Petitioner and suffered bruising and swelling, and the other officer was

4

bitten on the finger by Petitioner, breaking the skin. (Tr. of 3/14/19 Hr'g. [Doc. #14-13] at 18.) Petitioner later pled guilty to the two counts of assault inflicting physical injury on a law enforcement officer arising from Petitioner's actions in court on February 4, 2019, with application of the enhancement as a habitual felon.

Petitioner's Claims

1. <u>Case 1:22CV978 – Larceny and Financial Card Theft</u>

In the '978 case,[4] Petitioner challenges his state convictions in 17CRS53793, which is the January 2019 state conviction for felony larceny and financial card theft. Petitioner first argues "ineffective assistance of counsel and due process violations, and Brady violations." (Petition in 1:22CV978 [Doc. #2] at 5.) He states his attorney, Jocelyn Wright, refused him discovery, failed to investigate anything related to his defense or consider his discovery, and despite knowing there was another person involved, never brought it to the court's attention. (<u>Id.</u>) In his second ground, he argues the prosecutor improperly relied on a dismissed charge and other misdemeanors in calculating his sentencing points. (<u>Id.</u> at 7.) In his third ground, he argues his attorney had a conflict of interest because she had trained and previously worked with the prosecutor in Petitioner's case, and because after the time she represented Petitioner she later returned to the district attorney's office for Alamance County. (<u>Id.</u> at 8.)

2. <u>Case 1:22CV977 – Assault on Law Enforcement Officers</u>

In the '977 case, Petitioner challenges his state convictions in 19CRS50674 for two counts of Assault Inflicting Physical Injury on a Law Enforcement Officer. Petitioner first argues that the convictions and sentences are in violation of Double Jeopardy because the

---

[4] The Court takes the cases in reverse numerical order ('978, '977, then '976) to keep the challenged convictions in chronological order.

assaults against the officers involved the same incident and happened at the same time and place, and he contends that he therefore should have only been given one sentence, not two consecutive sentences. (Petition in 1:22CV977 [Doc. #2] at 5.) Petitioner also states his plea was under duress because he was told he would get 30 or more years if he did not take the offer. (Id.) In his second ground, he again argues he was put under duress to take the plea because the public defender told him he would get 30 or more years if he did not take the offer. (Id. at 7.)

   3.  Case 1:22CV976 – Habitual Felon

Finally, in the '976 case, Petitioner challenges the state charge in 19CRS559 as a habitual felon that resulted in an enhancement to his sentences for assault on a law enforcement officer.[5] Petitioner first asserts "invalid sentences and duress by public defender." (Petition [Doc. #2] at 5.) In support he argues that his public defender put him under duress to get him to plead guilty and that all his charges have invalid sentences "due to many violations of law and Constitutional violations." (Id.) Second, he asserts violation of the Double Jeopardy Clause. Third, he argues his status as a habitual felon is discriminatory because it may be based on his race and color. (Id. at 8.) He also contends "my habitual plea was stipulated not a plea of guilt." (Id.)

---

[5]   In North Carolina, "when one who has already attained the status of an habitual felon is indicted for the commission of another felony, that person may then be also indicted in a separate bill as being an habitual felon." State v. Allen, 292 N.C. 431, 433, 233 S.E.2d 585, 587 (1977) (discussing Habitual Felon Act, N.C. Gen. Stat. §§ 14-7.1, et seq.). "Being an habitual felon is not a crime but is a status the attaining of which subjects a person thereafter convicted of a crime to an increased punishment for that crime." Id. at 435, 233 S.E.2d at 588. . . . "[T]he Habitual Felon Act elevates the convicted person's status within Structured Sentencing so that the person is eligible for longer minimum and maximum sentences." State v. Parks, 146 N.C. App. 568, 572, 553 S.E.2d 695, 698 (2001), review denied, 355 N.C. 220, 560 S.E.2d 355 (2002).
 Haizlip v. Poole, No. 1:15CV417, 2016 WL 225664 at *2-3 and n.5 (M.D.N.C. Jan. 19, 2016).

In response to the Petitions, Respondent contends that all of Petitioner's arguments are procedurally defaulted and should be dismissed because Petitioner did not fully exhaust his state court remedies and that if he tried to do so now, the claims would be procedurally barred. (Brief [Doc. #14] at 12-13.) Respondent also argues the claims lack merit. (Id. at 15-16, 22-25.)

<u>Standard of Review</u>

This matter is before the Court on Respondent's Motions for Summary Judgment. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When considering a habeas petition pursuant to 28 U.S.C. § 2254(d), the Court may not grant relief unless a state court decision on the merits "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or . . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" United State Supreme Court precedent if the state court decision either "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law" or "confronts a set of facts that are materially indistinguishable from a decision of [the United States Supreme] Court and nevertheless arrives at a result different" from the United States Supreme Court. <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000). A state court decision involves an "unreasonable application" of Supreme Court case law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's

7

case." Id. at 407. "[E]ven 'clear error' will not suffice." White v Woodall, 572 U.S. 415, 419 (2014) (citing Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). "Rather, 'as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. at 419-20 (internal brackets omitted) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)). A summary disposition of a claim in state court is still entitled to § 2254's deferential review. See Harrington, 562 U.S. at 100. Finally, the factual findings of the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1). The petitioner bears the burden of rebutting this presumption by clear and convincing evidence. Id.

<u>Procedural Default and Failure to Exhaust State Remedies</u>

In these cases, Respondent first argues that Petitioner did not fully exhaust his state court remedies. Respondent further argues if Petitioner tried to do so now the claims would be barred in state court, and therefore, are procedurally defaulted and barred from consideration by this Court unless Petitioner can demonstrate either cause for the default and actual prejudice, or a fundamental miscarriage of justice. (Brief [Doc. #14] at 12-13.)

Title 28 U.S.C. § 2254(b)(1) requires petitioners to exhaust their state court remedies, i.e. allow "'the [s]tate the opportunity to pass upon and correct alleged violations of its prisoners' federal rights . . . [by] fairly present[ing] his claim in each appropriate state court . . ., thereby alerting that court to the federal nature of the claim.'" Jones v. Sussex I State Prison, 591 F.3d 707, 712 (4th Cir. 2010) (internal quotation marks and ellipses omitted) (quoting Baldwin v. Reese, 541 U.S. 27, 29 (2004)). "Fair presentation" means "both the operative facts

8

and the controlling legal principles" behind a specific federal habeas claim were "presented face-up and squarely." Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000). Petitioner must also "raise his claim before every available state court, including those courts . . . whose review is discretionary." Jones, 591 F.3d at 713 (citing O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999)).

In North Carolina, a petitioner may satisfy the exhaustion requirement of § 2254 by raising his claim(s) in a direct appeal of his conviction and/or sentence to the North Carolina Court of Appeals followed by a petition to the Supreme Court of North Carolina for discretionary review, or by raising his claims in a Motion for Appropriate Relief ("MAR") and petitioning the North Carolina Court of Appeals for a writ of certiorari if the MAR is denied. See Lassiter v. Lewis, No. 5:11-HC-2082-D, 2012 WL 1965434, at *4-5 (E.D.N.C. May 31, 2012) (unpublished) (citing O'Sullivan, 526 U.S. at 845 and N.C. Gen. Stat. §§ 7A–31, 15A– 1422).

In his first MAR, Petitioner challenged his January 2019 conviction and sentence for larceny and financial card fraud. Petitioner argued that his plea was under duress and that Attorney Wright was ineffective in various respects including that she denied him discovery, refused to investigate or present evidence of his innocence, and coerced him into taking the plea. (MAR [Doc. #14-17] at ¶ 2.) The MAR court denied his claims and Petitioner filed a petition for writ of certiorari to the North Carolina Court of Appeals. However, the petition for writ of certiorari was dismissed for failing to attach the necessary documents as required

by N.C. R. App. P. 21(c).[6] (Order of 12/4/20 [Doc. #14-20] at 2.) Petitioner subsequently filed a petition for writ certiorari with the North Carolina Supreme Court which was dismissed. (Order of 2/9/2022 [Doc. #14-22] at 2.)

By failing to file a petition for writ of certiorari with the North Carolina Court of Appeals that complied with the applicable law and included the documents necessary to assess his claim, he did not provide the court a fair opportunity to resolve his claims. A petition that is dismissed under N.C. R. App. P. 21(c) is not properly filed. See Floyd v. Perry, No. 1:16CV1333, 2017 WL 2275016, at *3 (M.D.N.C. May 24, 2017) (unpublished). Petitioner did not file another petition with the North Carolina Court of Appeals. Petitioner's subsequent filing in the North Carolina Supreme Court could not correct this defect. Under state law the correct forum for seeking review of the denial of a MAR is the Court of Appeals. See N.C. R. App. P. 21(e); N.C. Gen. Stat. § 15A-1422(c)(3). Here, because Petitioner failed to properly file a certiorari petition in the North Carolina Court of Appeals, his claims were not fully exhausted in state court. See O'Sullivan, 526 U.S. at 847 (requiring a petition for writ of certiorari be filed to properly exhaust where discretionary review is part of the process in state court).

In his second MAR, Petitioner again challenged his January 2019 conviction and sentence for larceny and financial card theft, and also challenged his March 2019 convictions for assault with physical injury on a law enforcement officer. With respect to this second

---

[6] N.C. R. App. P. 21(c) provides in relevant part that a petition shall include "certified copies of the judgment, order, or opinion or parts of the record which may be essential to an understanding of the matters set forth in the petition." Petitioner attacked the voluntary nature of his plea, but according to the record before the Court he did not include the transcript of the judgment or the verbatim transcript of the plea when he filed his petition. See Petition [Doc. #14-19].

MAR, the trial court ruled that the claims related to the January 2019 conviction and sentence were procedurally barred under N.C. Gen. Stat. § 15A-1419(a)(1) because they were either raised in the first MAR or could have been raised and Petitioner failed to do so. (Order of 6/3/22 [Doc. #14-24] at ¶ 6.) The court also concluded the claims lacked merit. (Id. at ¶ ¶ 7-8.) The court further concluded that the challenges to the March 2019 convictions were without merit. Petitioner did not seek a petition for writ of certiorari from that ruling as was required to fully exhaust those claims in state court.

Where a petitioner fails to exhaust a claim in state court and would now find the unexhausted claim subject to a procedural bar in state court, the federal habeas claims are considered procedurally defaulted. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998) (citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)); see also O'Sullivan, 526 U.S. at 847. With respect to the first MAR, Petitioner's petition for writ of certiorari to the North Carolina Court of Appeal was dismissed over four years ago for failure to attach the necessary documents. Petitioner never attempted to refile it despite making other filings in state and federal court. As to the second MAR, it has been over two years since the second MAR was dismissed. If Petitioner now attempted to return to the North Carolina Court of Appeals to file petitions for writ of certiorari in these cases, the court would likely find any new filings were unreasonably delayed, and therefore, procedurally barred. See N.C. R. App. P. 21(e) (requiring that petitions for writ of certiorari to be filed without unreasonable delay); McConnell v. Beck, 427 F. Supp. 2d 578, 582 (M.D.N.C. 2006) (finding it unlikely that the N.C. R. App. P. 21(e) time for filing would extend beyond 30 days absent unusual circumstances). Therefore, Petitioner's claims are procedurally defaulted.

11

Federal habeas review of a state prisoner's claims that are procedurally defaulted "is barred unless the prisoner can show cause for the default and demonstrate actual prejudice as a result of the alleged violation of federal law, or prove that failure to consider the claims will result in a fundamental miscarriage of justice." McCarver v. Lee, 221 F.3d 583, 588 (4th Cir. 2000). To show cause, a petitioner must show an external factor that prevented him from complying with the state procedural rule. Coleman, 501 U.S. at 753. To show prejudice, a petitioner must show he was actually prejudiced by the alleged violation of the federal law he is asserting. United States v. Frady, 456 U.S. 152, 167-70 (1982). Ignorance of the law, even on the part of a *pro se* petitioner, does not qualify as cause to excuse default. See Holloway v. Smith, No. 95–7737, 81 F.3d 149 (table), 1996 WL 160777, at *1 (4th Cir. Apr. 8, 1996) (unpublished) ("[The petitioner] does not meet the cause and prejudice standard because unfamiliarity with the law and his pro se status do not constitute adequate justification to excuse his failure to present the claim earlier . . . .").

In his responses to the Motion for Summary Judgment, Petitioner does not acknowledge Respondent's arguments that his claims are procedurally barred, and he fails to assert cause or prejudice or a fundamental miscarriage of justice to overcome the procedural default. Petitioner does mention, in other contexts, difficulty in obtaining copies of the transcripts in his case. [7] It is possible that Petitioner could be contending that any procedural bar should be excused because he was unable to obtain the transcript of plea and verbatim

---

[7] Documents attached to his first MAR indicate Petitioner made several written attempts to get copies of his transcripts. (MAR [Doc. #14-17] at 11-16.) These were also attached to the petition to the North Carolina Court of Appeals.

transcript to attach to his original petition. However, a letter attached to his petition for writ of certiorari to the North Carolina Court of Appeal indicates that Petitioner was sent his transcript of plea form along with other documents on or about October 31, 2019. (Petition [Doc. #14-19] at 23.) However, he did not attach the transcript of plea form in support of his petition for certiorari. Petitioner also acknowledges obtaining the documents himself through Prisoner Legal Services, but there is no indication he ever attempted to refile the petition for certiorari with the North Carolina Court of Appeal. Accordingly, Petitioner has not shown cause and prejudice or a fundamental miscarriage of justice to excuse his default.

Moreover, as argued by Respondent, even if considered on the merits Petitioner's claims would fail. Thus, even if procedural default did not apply, or even if Petitioner could show cause and prejudice for the default, the claims would fail in any event, as set out below.

<u>Failure of Claims on the Merits</u>

<u>1. Guilty Pleas a Result of Duress and Ineffective Assistance of Counsel</u>

In the '978 case challenging the January 2019 convictions for larceny and financial card theft, Petitioner raises the claim that he did not want to enter a plea and that his plea was made under duress because of pressure he received from the public defender, Attorney Wright. Intertwined with his argument that his plea was made under duress are claims of ineffective assistance of counsel. Petitioner argues that counsel refused to give him discovery, failed to investigate his innocence or defense, refused his witnesses, was untruthful with him, failed to implicate his former roommate, and refused to remove herself off the case when he asked her to. Petitioner asserts he never wanted to enter a plea and that he wanted to go to trial. He contends his plea was made under duress because counsel said he would get locked away from

13

his family longer if he did not take the deal.  He also argues his attorney failed to conduct an adequate investigation into his defense and refused to use or present his witnesses or discovery.[8]

Whether these arguments are considered as a challenge to the knowing and voluntary nature of his plea, or whether they are analyzed as claims of ineffective assistance of counsel, Petitioner is unable to establish that he is entitled to relief from this Court.   With respect to the voluntary nature of his plea, the Constitution requires that a defendant entering a guilty plea must do so knowingly, voluntarily, and intelligently.  Brady v. United States, 397 U.S. 742, 748 (1970).  However, "representations of the defendant, [and] his lawyer . . . at . . . a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings."  Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "In the absence of clear and convincing evidence to the contrary, [a petitioner] must be bound by what he said at the time of the plea."  Little v. Allsbrook, 731 F.2d 238, 239 n.2 (4th Cir. 1984).  Therefore, the Court must look to see whether Petitioner's claims conflict with his statements at the time of his plea and, if so, whether Petitioner has given valid reasons

---

[8] In his Petition filed in the '978 case, Petitioner makes the statement "ineffective assistance of counsel and due process violations and Brady violations" along with his arguments that his attorney was ineffective and failed to investigate discovery and refused his witnesses. (Petition in 1:22CV978 [Doc. #2] at 5.)  Petitioner does not explain the Brady reference and the Court is not certain whether it is a reference to Brady v. United States, 397 U.S. 742, 748 (1970), which discusses the concept of  a knowing and voluntary plea, or perhaps Brady v. Maryland, 373 U.S. 83, 87 (1963), which Petitioner cited at one point in documents attached to his MAR (see MAR [Doc. #14-17] at 15), and which recognizes that the failure of the prosecution to disclose favorable evidence violates due process. This vague and conclusory reference, which Petitioner does not relate to any facts, cannot establish a basis for relief.  Further, insofar as Petitioner may be arguing that the alleged failure of his attorney to give him discovery violated Brady v. Maryland, his reliance on the case is misplaced. Petitioner has not alleged exculpatory evidence was withheld by the State. "[T]here is no general constitutional right to discovery in a criminal case, and Brady, which addressed only exculpatory evidence, did not create one."  Gray v. Netherland, 518 U.S. 152, 168 (1996) (internal quotation omitted).

14

for the changes.  Via v. Superintendent, Powhatan Corr. Ctr., 643 F.2d 167, 171-72 (4th Cir. 1981).

Further with respect to alleged ineffective assistance of counsel, to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance.  See Strickland v. Washington, 466 U.S. 668 (1984).  With respect to the first prong of Strickland, a petitioner bears the burden of affirmatively showing deficient performance.  See Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994).  With respect to the second prong to Strickland, to show prejudice when challenging a guilty plea, a petitioner must establish that there is a reasonable probability that but for counsel's allegedly deficient conduct, he would not have pled guilty but would have gone to trial.  Hill v. Lockhart, 474 U.S. 52, 58-59 (1985).  In evaluating such a claim, the Court may consider whether "a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010) (citing Roe v. Flores-Ortega, 528 U.S. 470, 480, 486 (2000)).

With respect to the January 2019 conviction for larceny and financial card theft, in his first MAR Petitioner presented the argument that his plea was not voluntary and was made under duress.  (MAR [Doc. #14-17] at ¶ 2.)  Petitioner claimed that he did not make a plea, but really asked to go to trial.  (Id. at ¶ 1.)  Petitioner claimed that he told the trial judge "Yes, I'm being forced to take time for something I did not do." (Id. at ¶ 4(d).)  He also argued that his attorney, Attorney Wright, was ineffective in various respects including that she denied him discovery, refused to investigate or present evidence of his innocence, and coerced him into taking the plea.  (Id.)  In denying Petitioner's claim, the MAR court found that "the

15

verbatim transcript of the plea proceeding clearly illustrates the trial court's thorough colloquy with Defendant regarding the Defendant's knowing, voluntary and intelligent decision to plead no contest and accept the plea arrangement." (Order of 4/13/20 [Doc. #14-18] at ¶ 4). Moreover, the MAR court found Petitioner "specifically admitted he wanted to accept the plea arrangement at least five (5) times and that no one promised Defendant anything or threatened Defendant in any way." (Id. at ¶ 5.) The court found that Petitioner never stated to the judge accepting the plea that he was being forced to take time for something he did not do.[9] (Id. at ¶ 6.)

The MAR court also found Petitioner was unable to show ineffective assistance of counsel under either prong of Strickland. (Id. at ¶ 9.) Petitioner raised these claims again in his second MAR, and argued he was pressured into taking the plea because his attorney told him if he did not take the deal he would be locked away from his family longer. (Second MAR [Doc. #14-23] at 3.) The MAR court ruled that Petitioner failed to show any valid basis to support relief and again found that the verbatim transcript of the plea illustrated Petitioner's "knowing, voluntary, and intelligent decision to plead no contest and accept the plea arrangement." (Order of 6/6/2022 [Doc. #14-24] at ¶ 7.)

Petitioner is unable to show that these rulings by the MAR courts are contrary to, or based on an unreasonable application of federal law, or involve an unreasonable determination of the facts.

_____

[9] In his response to the Motion for Summary Judgment, Petitioner alleges that his comments that he was being forced to take time for something he did not do were removed from the transcript, and he says "I know & believe that Alamance Court officials had this part of what I said somehow deleted out or doctored out of the transcript, which isn't impossible for powerful public & court officials with money & to do with todays [sic] technology." (Response [Doc. #22] at 6.) However, this unsupported allegation cannot undermine the presumption of the regularity of the transcript. See Norris v. Schotten, 146 F.3d 314, 333 (6th Cir. 1998).

In his response, Petitioner claims that Attorney Wright was pressuring him with the potential sentence he faced as a habitual felon, and he claims that he kept telling her he wanted to go to trial. He claims that when she handed him the plea transcript to sign, he was being rushed and she gave him "the false impression that she was getting me a trial date & a hearing, in which I didn't find out otherwise until it was too late & we were in front of the judge. That's why I first went along with the judge's questions about me taking the deal . . . ." (Response [Doc. #21] at 5.) Later in his response, he states with respect to the no contest plea that it "was forced on me herself without my consent or knowledge of her doing so while in the court's conference room." (Id.) However, none of this is supported by the verbatim transcript which shows that while Petitioner continued to claim he was simply doing a good deed, he also clearly expressed that he wanted to take the plea deal. (Tr. of 1/28/2019 Hr'g. [Doc. #14-7] at 7.) In fact, one of his first statements to the court at the time of the plea came after the court summarized the exposure Petitioner faced if he proceeded to trial and summarized the deal the state offered. Petitioner interjected and said, "Yes. I was willing to take that." (Id. at 6.) Upon further discussion Petitioner indicated he wanted to take the plea but first needed time to help his fiancée make arrangements for their children. (Id. at 7.)

After Petitioner indicated he wanted to take the deal if he could delay the start of his sentence, the court took a recess to allow Petitioner an opportunity to go over the plea transcript with his attorney before entering the plea. (Id. at 13.) Upon returning to court, Petitioner did not indicate that he had any questions or hesitations. At the time the court accepted the plea, Petitioner confirmed that he understood the charges and possible defenses, and confirmed that he was satisfied with his lawyer's services. (Id. at 15.) The colloquy

17

indicates that he understood the rights he was waiving and understood that even by pleading no contest he would be treated as being guilty. (Id. at 18.) He was specifically asked if "anyone promised you anything or threatened you in any way to cause you to enter this plea against your wishes?" and he said no and agreed he was entering the plea of his own free will. (Id. at 20.)

The statements made by Petitioner belie his allegation that he did not know he was entering a plea, that he was forced to plead against his will, or that he wanted to proceed to trial. The colloquy demonstrates that although Petitioner continued to assert that he had only been doing a good deed, he understood the plea deal was a good option and he wanted to take it. (Id. at 8, 13-20.) In addition to his statements indicating that he understood the consequences and wanted to enter the plea, Petitioner's demeanor at the sentencing, during which he readily engaged in discussion with the judge, also undermines his assertion that he was under duress or did not intend to enter a plea.[10] Because Petitioner continued to make statements alluding to not being guilty, before accepting the plea the court asked if he wanted to continue. Petitioner indicated he was satisfied with his attorney and wanted to stick with his no contest plea. (Id. at 28-29.) Petitioner stated "Yeah, yeah, I'm going to stick with that. I'm going to stick with that. Just ride with it." (Id. at 29.) Petitioner fails to present any evidence to overcome these statements. While he may have changed his mind by the time he reported to serve his sentence a week later, the record clearly supports the MAR court's determination that the plea was knowingly, voluntarily, and intelligently entered.

---

[10] He discussed with the judge his need to make money, arrange his finances, and arrange to childcare, all to help his children before he began serving his sentence. He also interjected and disputed the characterization of the stolen item as a purse rather than a wallet. (Tr. of 1/28/2019 Hr'g. [Doc. #14-7] at 8.)

18

Moreover, Petitioner is unable to show he received ineffective assistance of counsel insofar as counsel may have given him any advice encouraging him to consider the guilty plea. Petitioner repeatedly asserts he was placed under duress to take the plea because his attorney told him he faced a lengthy sentence and longer time locked away from his family if he did not take the deal. However, the fact that his attorney correctly informed Petitioner that he faced substantial additional time if he proceeded to trial and lost is not ineffective assistance of counsel, but rather a fair assessment of the circumstances. Prior to accepting his plea on the felony larceny and financial card theft charges, Petitioner faced additional charges and faced a presumptive sentencing range of 103 to 136 months at the low end, 128 to 166 at the top end, and 160 to 204 if sentenced in the aggravated range. (Tr. of 1/28/2019 [Doc. #14-7] at 6.) In exchange for his plea, the habitual felony enhancement and separate charge for being a felon in possession of a firearm were dismissed and Petitioner was given a sentence of 24 to 38 months. (Id.)

Petitioner is unable to show that a decision to reject the plea agreement would have been rational under the circumstances. Petitioner's statements at the time of the plea demonstrate he understood the benefit of the plea agreement considering the charges he was facing. His in-court statements indicate that while he did not necessarily like the choice he was presented with, he understood his options and unequivocally wanted to take advantage of the plea deal. (Tr. of 1/28/2019 Hr'g [Doc. #14-7] at 12, 14-15, 19-20.) He also indicated during the colloquy that he was satisfied with his attorney's services. (Id.) And despite his assertions to the contrary, the case against him was strong. The information in the record indicates that the video surveillance from the store showed Petitioner taking the purse from

19

where he found it and leaving the store. When the wallet was eventually retrieved by the police it was taken from a grill where it was hidden outside the home where he stayed with his fiancée, and all the money was missing. With respect to financial card theft, he is mistaken that the State had to show he used the card to convict him of the charges. See N.C. Gen. Stat. § 14-113. With respect to his challenge to the amount of money in the wallet, the State had evidence from the victim indicating she had recently cashed a check and from the victim and her son about the other money she normally kept in the wallet. (Tr. of 1/28/2019 [Doc. #14-7] at 23.)

In light of the State's case against him, he is unable to show that any of his alleged evidence or witnesses would have mounted a substantial defense to the charges against him and that counsel was constitutionally ineffective for failing to further develop this information or by advising him to take the plea. Petitioner fails to show that it would have been rational to reject the State's offer which dismissed two of the charges and reduced his sentencing exposure by more than a decade. And most importantly, Petitioner is unable to show the MAR court's ruling with respect to these arguments is contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts.

While Petitioner devotes many pages in his Response and Supplement to evidence he feels could have been raised to show he was innocent of felony larceny and financial card theft, and pointing to what he considered deficiencies in the State's case against him, these arguments have no bearing once he entered his valid plea. When Petitioner entered his no contest plea, he waived all his arguments with respect to whether he was actually guilty or whether the State

could prove he committed the crimes. See Boykin v. Alabama, 395 U.S. 238, 243 n.4 (1969). A "plea represents a break in the chain of events which has preceded it in the criminal process." See Tollet v. Henderson, 411 U.S. 258, 267 (1973). Petitioner's plea also waived his arguments asserting ineffective assistance of counsel except with respect to whether the advice with respect to the plea was not within the range of competent advice by counsel. See Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). Therefore, to the extent Petitioner is arguing about the sufficiency of the evidence against him, that he is not guilty, or about the trial strategies that could have been used, Petitioner cannot show he is entitled to any relief.

Petitioner also raises claims of duress in the '977 and '976 cases, involving his plea to two counts of assault inflicting physical injury on a law enforcement officer and habitual felon status. Petitioner asserts his attorney placed him under duress to take the plea in violation of N.C. Gen. Stat. § 15A-1021(b), which prohibits a state actor from placing an individual under duress to get a guilty plea or a plea of no contest. This argument, which rests on a violation of state law, is not cognizable on federal habeas review. See 28 U.S.C. § 2254. Petitioner also contends that "my plea was made under duress being that I was told that I'd get 30 plus years if I didn't take the offer." (Petition in 1:22CV977 [Doc. #2] at 6.) Petitioner does not support this claim with any additional facts or information. To the extent that these statements raise a claim that his guilty pleas on the assault charges were made under duress, Petitioner cannot show he was placed under duress just because counsel accurately told him about his substantial sentencing exposure. The record shows that in the absence of a plea he was facing several additional charges and "facing two 204 month sentences on two Class Ds, habitual, and three 88 month sentences as a Level Six aggravated." (Tr. of 3/14/2019 Hr'g. [Doc. #14-13] at 4.)

21

In addition, the verbatim transcript contradicts his claim that the second plea was a product of duress. The transcript indicates Petitioner took responsibility on the record for his actions. (Tr. of 3/14/2019 Hr'g. [Doc. 14-13] at 8, 22.) He personally asked if the sentences could run concurrently, noting that his fiancée had just had a baby, but was told the sentences had to run consecutively. (Id. at 9.) The record shows his sentencing exposure was explained both with and without the plea deal, and Petitioner indicated he understood, wanted to plead guilty, and he did so. (Id. at 15-17.) Petitioner fails to present anything to contradict this evidence and is bound by his in-court statements which show his plea was made knowingly, voluntarily, and intelligently. See Little, 731 F.2d at 239 n.2.[11]

## 2. Conflict of Interest

As to the '978 case challenging his convictions for larceny and financial card theft, Petitioner also claims he received ineffective assistance of counsel because Attorney Wright had a conflict of interest. He contends she "was just recently working for the district attorney's office before she took my case mysteriously after my first public defender withdrew after I refused his one year offer." (Petition in 1:22CV978 (Doc. #2] at 8). He further contends that in her former position in the district attorney's office, she had previously trained and worked

---

[11] As noted above, Respondent argues that this claim was raised and treated in the second MAR but was procedurally defaulted based on Petitioner's failure to properly exhaust his state court remedies by filing a petition for a writ of certiorari with the Court of Appeals. (Brief [Doc. #14] at 12-13, 15-16; MAR [Doc. #14-19] at 64.) Moreover, even if not defaulted or if cause and prejudice could be shown to excuse the default, Petitioner is unable to show the MAR court's dismissal of this claim is contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts. The Court also notes that to the extent this claim may not have been specifically raised in the second MAR, the claim would not be exhausted, and if Petitioner returned to state court to exhaust this claim for relief, it would be subject to a procedural bar under N.C. Gen. Stat. § 15A-1419(a)(1), which is an independent and adequate state bar to relief, still resulting in a procedural default, Bacon v. Lee, 225 F.3d 470, 476 (4th Cir. 2000), and the claim is without basis in any event as discussed above.

with the prosecutor in the case, and that at some time after she represented Petitioner, she returned to the district attorney's office.  (Id.)

In his first MAR, Petitioner generally argued "[t]here was definitely a conflict of interest between me and my attorney (Joselyn [sic] Wright) for ineffective assistance of counsel and why I made the statement I made to Judge Holt on January 28, 2019 in open court.  It also shows we had a conflict of interest when I told Attorney Wright to withdraw the plea she made for me on Jan. 28, 2019 during her having me come to Superior Court February 4, 2019 to also withdraw as my attorney, like I asked her to before."  (First MAR [Doc. #14-17] at 4.) However, Petitioner's specific arguments about counsel's history with the District Attorney's office were not raised until his second MAR.  In the second MAR, Petitioner wrote, "my attorney, Joselyn Wright (also) should not have been given my case at all, given her work history with the Alamance County District Attorney's office, then going on to become head D.C. of Alamance County – which is a conflict of interest issue; not to mention it also is that she trained and worked with the very prosecutor on my case is an conflict issue."  (Second MAR [Doc. #14-23] at 7.)  In the second MAR, the court found all the claims related to the January 2019 convictions procedurally barred pursuant to N.C. Gen. Stat. § 15A-1419(a)(1). (Order of 6/3/2022 [Doc. #14-24] at 2.)  Therefore, as discussed above, the claims are procedurally defaulted, and Petitioner has not shown a basis to overcome the procedural default.[12]

--------

[12] Whether the claim was raised in the first MAR or first raised in the second MAR ultimately does not matter, because either way the claim is procedurally barred. As discussed above, because Petitioner failed to fully exhaust state court remedies with respect to claims brought in the first MAR, Petitioner would now be barred from doing so, and therefore, the claims are barred in this Court. See Breard, 134 F.3d at 619 (citing Coleman, 501 U.S. at 735 n.1). In the event the claim was first raised in the second MAR, the state court found the claim was barred pursuant to N.C. Gen. Stat. § 15A-1419(a)(1), which "constitutes an independent and adequate state

Moreover, the claims fail on the merits in any event. "A criminal defendant's Sixth Amendment right to effective assistance of counsel includes a right to counsel unhindered by conflicts of interest." Mickens v. Taylor, 240 F.3d 348, 355 (4th Cir. 2001). A petitioner seeking relief due to an alleged conflict of interest "must show that his lawyer had 'an actual conflict of interest' that 'adversely affected his lawyer's performance.'" United States v. Perry, 92 F.4th 500, 517 (4th Cir. 2024) (quoting Cuyler v. Sullivan, 446 U.S. 335, 348 (1980)). To show an actual conflict, Petitioner must show that his lawyer "actively represented conflicting interests." Cuyler, 446 U.S. at 350. Petitioner is unable to meet this burden. Petitioner merely asserts a hypothetical conflict, arguing that because his attorney had relationships with the prosecutors and District Attorney's office at various points before and after she represented him she suffered from a conflict of interest. However, Petitioner does not indicate that at any point his attorney was actually representing different interests. His allegations are conclusory and are insufficient to establish an actual conflict of interest. See Mickens v. Taylor, 535 U.S. 162, 171 (2002). Further, in the absence of a conflict or other constitutionally deficient performance, petitioner cannot show counsel's failure to withdraw from representing him denied him his rights. Although an indigent defendant has the right to have counsel appointed, an indigent defendant does not have the right to counsel of his choice or to demand new

---

ground that may give rise to procedural default of federal habeas claims." Bacon, 225 F.3d at 476. Therefore, procedural default applies either way, and the claim is barred from consideration by this Court unless Petitioner can show cause and prejudice to excuse his procedural default or show the Court's failure to address his claim will result in a miscarriage of justice. See Longworth v. Ozmint, 377 F.3d at 437, 447-48 (4th Cir. 2004). Petitioner does not respond to the arguments raised by Respondent that his claims are procedurally defaulted. Therefore, he fails to assert cause and prejudice or that the failure to consider the claim will result in a fundamental miscarriage of justice. Moreover, as discussed above, the claim would fail on the merits in any event.

counsel in the absence of good cause. United States v. Murphy, 330 F. App'x 434, 436 (4th Cir. 2009) (citing United States v. Gonzalez-Lopez, 548 U.S. 140, 151 (2006)). Consequently, Petitioner is unable to show that the MAR court's determination that the claim lacked merit was based on an unreasonable application of clearly established federal law or an unreasonable determination of the facts.

### 3. Errors in Sentencing Calculations

Petitioner also argues he is entitled to relief in both the '978 case challenging his convictions for larceny and financial card theft and the '977 case challenging his convictions for assault, based on his contention that the prosecutors used dismissed charges to calculate his sentencing points. Specifically, Petitioner states that an earlier breaking and entering charge relied upon to calculate his criminal history was dismissed prior to sentencing and should not have been counted. Petitioner also argues that his criminal history was incorrectly calculated because misdemeanors were included but "the only misdemeanor offenses under Chapter 20 that are assigned points for determining prior record level for felony sentencing are misdemeanor death by vehicle and for sentencing for felony offenses committed on or after December 1, 1997, impaired driving and commercial impaired driving, which none of my misdemeanors are any of these." (Petition in 1:22CV978 [Doc. #2] at 7.) Petitioner raised these arguments for the first time in his second MAR. He argued that his due process rights were violated by the State relying on the dismissed breaking and entering charge. (Second MAR [Doc. #14-23] at 2.) He also argued that according to the sentencing worksheet, only impaired driving and commercial impaired driving misdemeanors could be used to calculate

sentencing points, so therefore, his other misdemeanor convictions should not have been relied upon and his sentence should be reduced. (Id.)

In ruling on the second MAR, the trial court first held any claims related to the January 2019 conviction not brought in the first MAR were barred under N.C. Gen. Stat. § 15A-1419(a)(1) because Petitioner was in a position to raise the claims but did not do so, and alternatively that the claims lacked merit. (Order on Second MAR [Doc. #14-24] at ¶ 6-8.)[13] The second MAR court further ruled that any such claims related to the March 2019 assault convictions likewise lacked merit. (Order of 6/6/2022 [Doc. #14-24] at ¶ 8.) With respect to the breaking and entering claim, the MAR court found that "[t]he court incorrectly assigned Defendant 24 points, rather than 23, but the correct calculation of Defendant's prior record points does not affect determination of his prior record level." (Id. at ¶ 7.) The MAR court found that Petitioner's other argument regarding what misdemeanors could be relied on in calculating his sentence was incorrect. The MAR court explained that under N.C. Gen. Stat. § 15A-1340.14(b)(5), "misdemeanor is defined as any Class A1 and Class 1 nontraffic misdemeanor offense, impaired driving (N.C. Gen. Stat. § 20-138.1), impaired driving in a commercial vehicle (N.C. Gen. Stat. § 20-138.2), and misdemeanor death by vehicle (N.C. Gen. Stat. § 20-141.4(a2)), but not any other misdemeanor traffic offense under Chapter 20 of the General Statutes." (Id. at ¶ 8 (emphasis added).)

---

[13] As discussed above, these claims related to the January 2019 convictions are procedurally defaulted because N.C. Gen. Stat. § 15A-1419(a)(1) constitutes an independent and adequate state ground for denial of relief, and the claims related to the March 2019 conviction are procedurally defaulted because Petitioner did not exhaust available state remedies by filing a petition for writ of certiorari as to the second MAR, and Petitioner fails to assert cause and prejudice, or a fundamental miscarriage of justice, to overcome the procedural default. Moreover, the claims are without merit in any event as discussed above.

26

In considering these claims on habeas review, the Court notes first that a claim alleging a mistake in the computation of criminal history points is an issue of state law. A federal court may not grant habeas relief based on an error of state law. See Estelle v. McGuire, 502 U.S. 62, 67 (1991). An error based on state sentencing law can only be addressed on habeas review if the error is so "arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation." See Richmond v. Lewis, 506 U.S. 40, 50 (1992) (internal quotation omitted). Although Petitioner mentions due process, he does not explain how the incorrect calculation of one point, which did not impact his criminal history range, could rise to the level of a Constitutional violation. Petitioner has not disputed the MAR court's finding that any error was harmless because it would not change his criminal history level. Further, to the extent he makes assertions regarding the limited number of misdemeanors he believes could be used in sentencing, the record before the Court indicates Petitioner's argument is simply incorrect, as explained by the MAR court. Consequently, Petitioner cannot show the MAR court's ruling is contrary to, or an involved an unreasonable application of clearly established federal law.[14]

---

[14] In his Supplemental Response, Petitioner claims that his sentencing level was changed by "adding extra things to my record to give me a longer sentence & Wright never objected [to] any of it." (Supplement [Doc. #22] at 2.) To the extent this may be construed as an attempt by Petitioner to argue he received ineffective assistance of counsel because counsel did not find and object to the breaking and entering being relied upon at the time of sentencing, he is also not entitled to relief. Petitioner makes this claim of ineffective assistance of counsel for the first time in his federal habeas petition, and any such unexhausted claim would be procedurally barred as discussed above. Moreover, Petitioner is unable to show ineffective assistance of counsel on this basis. As discussed, the mistake in including the dismissed charge in the calculation of points did not alter Petitioner's criminal history calculation and Petitioner faced the same sentencing range. Therefore, even if Petitioner could show counsel was deficient in failing to raise this error, he cannot show he was prejudiced in violation of Strickland.

#### 4. Double Jeopardy

In the '977 and '976 cases challenging his convictions and sentences for assault inflicting physical injury upon a law enforcement officer, Petitioner contends that his consecutive sentences for the two assaults are in violation of the Double Jeopardy Clause. Petitioner argues that because both assaults happened on the same date and time and in the same incident, he should have only received one sentence. (Petition in 1:22CV976 [Doc. #2] at 6; Petition in 1:22CV977 [Doc. #2] at 5.) This claim was not raised in the first MAR. In his second MAR, petitioner argued that "I should have been given one sentence for the two assaults as stated by law, if they both occurred in the very same exact incident and moment and are both of the very same element." (Second MAR [Doc. #14-23] at 3.) In his affidavit in support of the MAR he also wrote, "[t]he two misdemeanor assaults on law enforcement officers sentence I received on 3/14/19 is invalid and is double jeopardy being that they are of the same element and occurred in the same exact event, day, place and time." (Id. at 7.)[15]

The Double Jeopardy Clause protects against "three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense.'" United States v Martin, 523 F.3d 281, 290 (4th Cir. 2008) (quoting United States v Halper, 490 U.S. 435, 440 (1989)). When a case involves multiple convictions arising from the same conduct and events, the Court must determine whether the statute was intended to charge one or multiple crimes

---

[15] Although Petitioner raised this claim in his second MAR, the claim is procedurally defaulted because Petitioner did not exhaust available state remedies by filing a petition for writ of certiorari with the North Carolina Court of Appeals as to the second MAR, and Petitioner fails to assert cause and prejudice, or a fundamental miscarriage of justice, to overcome the procedural default. Moreover, the claims are without merit in any event as discussed above.

28

considering the "unit of prosecution" under the applicable statute. <u>United States v. Shrader</u>, 675 F.3d 300, 313 (4th Cir. 2012). When the convictions arise under a state statute, "federal courts are essentially bound by state court interpretation of state legislative intent on this score." <u>Thomas v. Warden</u>, 683 F.2d 83, 85 (4th Cir. 1982).

Under North Carolina law, a person may be charged with multiple offenses for conduct arising from a single incident involving multiple victims. <u>See State v. Wright</u>, 212 N.C. App. 640, 643, 711 S.E.2d 797, 800 (2011); <u>State v. Washington</u>, 141 N.C. App. 354, 369-70, 540 S.E.2d 388, 398 (2000). Here, Petitioner was charged with two counts of assault inflicting injury on a law enforcement officer in violation of N.C. Gen. Stat. § 14-34.7(c)(1). The statute makes it a felony if a person "[a]ssaults a law enforcement officer . . . while the officer is discharging or attempting to discharge his or her official duties and inflicts physical injury on the officer." N.C. Gen. Stat. § 14-34.7(c)(1). Thus, the victim, rather than the course of conduct, is the "unit of prosecution." Petitioner was convicted of one count for each victim he injured, and each charge required proof of an injury to a different victim. The factual basis presented by the State indicated that one officer was elbowed by Petitioner and suffered bruising and swelling, and that Petitioner bit the other officer on the finger, breaking the skin. (Tr. of 3/14/2019 Hr'g. [Doc. #14-13] at 3-4.) Consequently, Petitioner is unable to show that these convictions are in violation of the Double Jeopardy Clause, nor can he show that receiving separate and consecutive sentences for each of these valid convictions violated his constitutional rights against double jeopardy. <u>See Missouri v. Hunter</u>, 459 U.S. 359, 367 (1983) (reiterating that if two offenses are not the 'same' for the Double Jeopardy purposes

cumulative punishments can be assessed).[16]  Petitioner is unable to show that the MAR court's dismissal of this claim is contrary to, or based on an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts.

### 5. Habitual Offender Enhancement

Finally, in the '976 case, Petitioner challenges the enhancement of the sentences in his March 2019 assault convictions based on his status as a habitual offender.[17]  Stipulating to habitual felon status enhanced the two assault convictions from Class I to Class E felonies for purposes of the state structured sentencing calculations.  Petitioner again raises double jeopardy, and may be arguing that punishment as a habitual offender results in a second punishment for his earlier offenses, in violation of the Double Jeopardy Clause.  However, "[t]he Supreme Court of the United States has repeatedly rejected challenges to enhanced sentences—which are based on a defendant's status as a recidivist offender—on the grounds that such sentences do not violate the ex post facto clause, due process, equal protection, or double jeopardy." Wilson v. Hooks, No. 5:19-CV-00108-MR, 2020 WL 3833090 (W.D.N.C.

---

[16] As Respondent notes, consecutive sentences are permitted under North Carolina law. See N.C. Gen. Stat. § 15A-1354(a).

[17] As Respondent contends, Petitioner did not raise arguments related to his status as habitual offender in either of his MARs.  Therefore, the claim has not been presented to the state courts and is not exhausted. If Petitioner returned to state court to exhaust this claim for relief, it would be subject to a mandatory procedural bar under N.C. Gen. Stat. § 15A-1419(a)(1), which is an independent, and adequate state bar to relief. Bacon, 225 F.3d at 476.  Therefore, the claim is barred from consideration by this Court unless Petitioner can show cause and prejudice to excuse his procedural default or show the Court's failure to address his claim will result in a miscarriage of justice. See Longworth, 377 F.3d at 447-48. Petitioner does not respond to the arguments raised by Respondent that these claims are procedurally defaulted.  Therefore, he fails to establish cause and prejudice or that the failure to consider the claim will result in a fundamental miscarriage of justice and the claim is barred in this Court.  Moreover, the claims are without merit in any event, as set out above.

July 8, 2020) (citing <u>Spencer v. Texas</u>, 385 U.S. 554, 559 (1967); <u>Rummel v. Estelle</u>, 445 U.S. 263, 265 (1980)).

Petitioner also argues his status as a habitual offender is "possibly" discriminatory because it may be based on race and color. In support he argues he believes he was given a sentence as a habitual offender based on race because he has "a couple of white friends who have more felonies than I do, from Alamance or been arrested there, that was never threatened with or given the habitual sentence." (Petition [Doc. #2] at 8.) Petitioner offers no proof beyond his assertion that two unnamed white friends with unknown circumstances were not given habitual felony sentences. In his Response to the Motion for Summary Judgment, he contends he was the victim of racial discrimination to run him and his children out of Alamance County. (Response [Doc. #21] at 1, 8-9.) He provides no specific information to support these claims. To be afforded relief on claims of this nature, a party must show "he has been treated differently from others with who he is similarly situated, and that the unequal treatment was the result of intentional or purposeful discrimination." <u>Morrison v. Garraghty</u>, 239 F.3d 648, 654 (4th Cir. 2001). Petitioner cannot establish a violation of his Constitutional rights or federal law on such conclusory allegations. <u>See</u> <u>Green v. North Carolina</u>, No. 5:10-CT-3099-BO, 2010 WL 9116186 (E.D.N.C. Dec. 2, 2010) ("These general allegations are not fact specific to satisfy the pleading requirement. These allegations are insufficient to establish that similarly situated persons were not prosecuted in a similar manner.").

Finally, Petitioner contends that his "habitual plea was stipulated, not a plea of guilt." (Petition [Doc. #2] at 8.) It is not clear how this would form the basis of a federal Constitutional claim. Moreover, to the extent he is somehow contending that he did not plead

31

guilty to being a habitual offender, the contention is contradicted by the verbatim transcript

of his guilty plea colloquy and clearly fails on the merits. (See Tr. of 3/14/2019 Hr'g. [Doc.

#14-13] at 10-17.)

## 6. Evidentiary Hearing

In his filings, Petitioner also asks the Court for an evidentiary hearing. He does not

specify what issues require a hearing, but in general asserts that Respondents are holding up

the case. (Response [Doc. #21] at 1.) He also states that he wants an "evidentiary hearing

with polygraph tests available for myself and the defendants." (Id.) Unsupported, conclusory

allegations do not entitle Petitioner to a hearing. See Nickerson v. Lee, 971 F.2d 1125, 1136

(4th Cir. 1992), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir.

1999). Petitioner fails to present any information which if developed points to a possibility of

habeas relief. In fact, it appears Petitioner is actually seeking an opportunity to fully litigate

the larceny and financial card theft charges and present a defense to the State's case against

him. As discussed previously, when Petitioner entered his plea, he waived his right to challenge

the case against him. Accordingly, his request for an evidentiary hearing is denied.

## Conclusion

IT IS THEREFORE RECOMMENDED that Respondent's Motions for Summary

Judgment (1:22CV976 [Doc. #13]; 1:22CV977 [Doc. #10]; 1:22CV978 [Doc. #10]), be

granted, that the Petitions (1:22CV976 [Doc. #2]; 1:22CV977 [Doc. #2]; 1:22CV978 [Doc.

#2]), be denied, that the cases be dismissed, and that there being no substantial issue for appeal

concerning the denial of a constitutional right affecting the conviction nor a debatable procedural ruling, a certificate of appealability not issue.

This, the 2nd day of August, 2024.

Joi Elizabeth Peake
United States Magistrate Judge